UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ECONO INN CORP., *et al.*,

    Plaintiffs,

v.

RON ROSENBERG, *et al.*,

    Defendants.

Case No. 15-cv-10991
Hon. Matthew F. Leitman

_____/

# **OPINION AND ORDER (1) DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF #18) AND (2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF #19)**

In 2001, Plaintiff Ketankumar Patel ("Patel"), a citizen of India, began working for Plaintiff Econo Inn Corp. ("Econo Inn," collectively with Patel, "Plaintiffs") as a motel manager. In 2007, Econo Inn filed an I-140 Immigration Petition for an Alien Worker on Patel's behalf (the "I-140 Petition"). The I-140 Petition, if granted, would have allowed Patel to obtain an employment visa and, eventually, to apply for lawful permanent residency in the United States.

On February 27, 2009, the United States Citizenship and Immigration Service ("USCIS") denied the I-140 Petition. Plaintiffs appealed the denial to the USCIS Administrative Appeals Office (the "AAO"), which ultimately affirmed the denial on August 9, 2013. Plaintiffs thereafter filed this action challenging the denial. (*See* Complaint, ECF #1.) Plaintiffs named as Defendants Ron Rosenberg,

1

Chief of the AAO, Leon Rodriguez, Director of USCIS, and Jeh Johnson, the Secretary of Homeland Security (collectively "Defendants"). (*See id.*)

The parties have now filed cross-motions for summary judgment. (*See* ECF ##18, 19.) For the reasons that follow, the Court will **GRANT** Defendants' motion and **DENY** Plaintiffs' motion.

## RELEVANT FACTUAL BACKGROUND, STATUTORY AND REGULATORY FRAMEWORK, AND PROCEDURAL HISTORY

Econo Inn is a Flint, Michigan, company that opened a motel of the same name in 1986. (*See* Administrative Record, ECF #17-1 at 5, Pg. ID 98.) Patel is a 43-year-old native and citizen of India who entered the United States on July 20, 1999. (*See id.* at 4, Pg. ID 97.) Patel is not a lawful permanent resident of this country. (*See id.*) Patel began working for Econo Inn shortly after his arrival in the United States.

In 2001, Plaintiffs began the process of seeking a skilled worker employment visa for Patel pursuant to the Immigration and Nationality Act (, 8 U.S.C. § 1101 *et seq.* (the "INA"). In *Woody's Oasis*, *v. Rosenberg*, No. 13-cv-367, 2014 WL 413503 (E.D. Mich. Feb. 4, 2014), the United States District Court for the Western District of Michigan provided the following helpful overview of skilled worker visa application process under the INA:

Under the Immigration and Nationality Act (INA), a non-citizen skilled worker may obtain a visa to work in the United States. 8 U.S.C. § 1153(b)(3)(A)(i). Such visas are available only if there are insufficient workers who are able, willing, and qualified to fill the position that the non-citizen seeks to fill, and the employment of the non-citizen would not adversely affect the wages and conditions of U.S. workers. 8 U.S.C. § 1182(a)(5)(A)(i). Authority to administer the INA has been delegated to the Department of Homeland Security and sub-delegated to the USCIS. 8 U.S.C. §1103(a)(1); 8 C.F.R. § 2.1.

If an employer seeks to employ a non-citizen skilled worker, the employer and non-citizen must follow a three-step process. *See Matovski v. Gonzalez*, 492 F.3d 722, 726-27 (6th Cir. 2007). First, the employer must file an application with the DOL, and obtain a certification from the DOL stating that there are insufficient qualified, able, and willing U.S. workers to fill the position. 8 U.S.C. § 1153(b)(3)(C); 1182 (a)(5)(A)(i)(I). As part of the certification, the DOL establishes the wage that the prospective employer must pay the prospective employee (the proffered wage). 8 U.S.C. § 1182(p).

If the DOL approves the labor certification, the employer must then file an I-140 petition with the USCIS. *See Matovski*, 492 F.3d at 727. The relevant regulation provides that the employer must show that it has the ability to pay the proffered wage starting on the date that the employer filed its application with the DOL (the priority date) and continuing until the USCIS approves the petition. 8 C.F.R. § 204.5(g)(2). Evidence of the ability to pay may take the form of annual reports, federal tax returns, or audited financial statements. *Id.* In some instances, additional evidence such as profit/loss statements, bank account records, or personnel records may be used to establish the ability to pay. *Id.*

3

> Finally, the non-citizen may apply for adjustment of status while the I-140 application is pending or after it is approved. 8 U.S.C. § 1255(a)(3). Approval of the application for adjustment of status is contingent upon approval of the employer's I-140 petition. 8 U.S.C. § 1255(a).

*Woody's Oasis*, 2014 WL 413503 at *2-3.

On April 30, 2001, Econo Inn filed an Application for Alien Employment Certification (the "Certification Application") with the Department of Labor (the "DOL") on Patel's behalf. (*See* Admin. R., ECF #17-1 at 8, Pg. ID 101.) Econo Inn sought to hire Patel as the full-time manager for its motel. (*See id.*) The DOL approved the Certification Application and set the "proffered wage" for Patel (that is, the Wage Econo Inn would be required to pay Patel) at $43,800 per year. (*See* Oct. 31, 2012, AAO Decision, ECF #17-4 at 147, Pg. ID 1068.)

Following the DOL's certification, Econo Inn filed the I-140 Petition with USCIS seeking to classify Patel as an alien beneficiary eligible for an immigration visa based on his employment as the motel's manager. (*See* Admin. R., ECF #17-1 at 4, Pg. ID 97.) Patel also filed an I-485 Application to Adjust Status in which he sought to change his legal status from an undocumented immigrant to a lawful permanent resident pending the approval of the I-140 Petition. (*See* Admin. R. ECF #17-4 at 247, Pg. ID 1168.)

4

On December 26, 2008, USCIS notified Econo Inn that it had not provided sufficient evidence of its ability to pay Patel's proffered $43,800 wage, as Econo Inn was specifically required to do under an applicable federal regulation, 8 C.F.R. § 204.5(g)(2) (the "Ability to Pay Regulation"). (*See* Admin. R., ECF #17-4 at 138, Pg. ID 1059.) USCIS requested that Econo Inn supplement the I-140 Petition with, among other things, audited financial statements, business tax returns, shareholder information, and Patel's Internal Revenue Service ("IRS") W-2 forms dating back to 2001. (*See* Admin. R., ECF #17-1 at 66-67, Pg. ID 159-60) Econo Inn then supplemented the I-140 Petition with (1) Patel's 2007 and 2008 W-2 forms (*see id.* at 73-75, Pg. ID 166-67); (2) Patel's June 2008 payroll vouchers (*see id.* at 77-79, Pg. ID 169-71); (3) a statement from Econo Inn's certified public accountant (*see id.* at 80-82, Pg. ID 172-74); (4) Econo Inn's operating cash flow statements and monthly bank statements from 2001-2007 (*see* Admin R., ECF #17-1 at 84 – ECF #17-2 at 110, Pg. ID 182-479); (5) Econo Inn's complete tax returns, including shareholder filings from 2001-2007 (*see* Admin R., ECF #17-2 at 112-73; Pg. ID 481-542); and (6) the personal tax returns for Econo Inn's sole shareholder, Dilip Patel. (*See* Admin R., ECF ##17-2 – 17-4, Pg. ID 550-1012.)

USCIS reviewed Econo Inn's supplemental documents and denied the I-140 Petition on the basis that Econo Inn failed to establish its ability to pay Patel's proffered wage. (*See* Admin. R., ECF #17-4 at 139, Pg. ID 1060.) USCIS

concluded that "after a complete review of the record, the evidence does not establish that the petitioner had the ability to pay the offered wage when the priority date was established (April 30, 2001), or that it continued to have such ability through to the present." (*Id.*)

On March 31, 2009, Econo Inn appealed USCIS's decision to the AAO, and the AAO upheld the I-140 Petition's denial on October 31, 2012. (*See* Oct. 31, 2012, AAO Decision, ECF #17-4 at 151, Pg. ID 1072.) Econo Inn then filed a motion to reopen and a motion to reconsider with the AAO (the "Motion for Reconsideration"). (*See* Aug. 9, 2013, AAO Decision, ECF #1-2 at 5, Pg. ID 19.) On August 9, 2013, the AAO ruled on the Motion for Reconsideration and affirmed the portion of its earlier decision in which it had concluded that Econo Inn failed to establish its ability to pay Patel's proffered wage.[1] (*See id.*)

On March 16, 2015, Plaintiffs filed this action against the Defendants. (*See* Compl., ECF #1.) Plaintiffs ask this Court to reverse the AAO's decision affirming the denial of the I-140 Petition.

The parties have now filed cross-motions for summary judgment. (*See* ECF ##18, 19.) Pursuant to Local Rule 7.1(f)(2), the Court concludes that oral argument would not aid its decision on the summary judgment motions, and for the

---

[1] The AAO withdrew the portion of its October 31, 2012, decision concluding that Econo Inn had failed to establish that Patel qualified for the management position. (*See* Aug. 9, 2013, AAO Decision, ECF #1-2 at 6, Pg. ID 20.) That portion of the decision is not at issue in this case.

6

reasons stated below, it grants Defendants' motion for summary judgment and denies Plaintiffs' motion.

## ANALYSIS

Plaintiffs raise two main arguments in their motion for summary judgment. First, Plaintiffs argue that the Ability to Pay Regulation is *ultra vires* to the INA and that the Defendants therefore may not deny the I-140 Petition on the ground that Econo Inn failed to satisfy that regulation. (*See* Pls.' Br., ECF #18 at 9-10, Pg. ID 1204-05.) Second, Plaintiffs argue that even if the Ability to Pay Regulation is valid, the Defendants arbitrarily and capriciously concluded that Econo Inn lacked the ability to pay Patel's proffered wage. (*See id.*) Defendants counter that the proffered wage requirement is not *ultra vires* to the INA and that they reasonably determined that Econo Inn had failed to demonstrate its ability to pay the proffered wage. (*See* Defs.' Br., ECF #19 at 13, 20, Pg. ID 1274, 1281.)

**A.     The *Ultra Vires* Challenge to the Ability to Pay Regulation**

    **1.     Standard of Review**

"In determining whether an agency regulation is *ultra vires*, [a federal court] appl[ies] the two step *Chevron*[2] analysis." *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 525 (9th Cir. 2012) (en banc); *see also Hachem v. Holder*, 656 F.3d 430, 438 (6th Cir. 2011) (applying *Chevron* test to determine "whether or not the regulation

---

[2] *Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

conflicts with the enabling statute"). Under *Chevron*'s first step, a federal court "first look[s] at the statute upon which the regulation is based." *Hachem*, 656 F.3d at 438. If the court determines that "'Congress has directly spoken to the precise question at issue,' then that is the end of the inquiry." *Id.* (quoting *Chevron*, 467 U.S. at 842-43). "The unambiguously expressed intent to Congress controls." *Id.* However, "if the statute is silent or ambiguous with respect to the specific issue," then a federal court must proceed to the second step of the *Chevron* analysis and determine whether the agency has provided a "permissible construction of the statute." *Id.* (quoting *Chevron*, 467 U.S. at 842-43). In conducting the second step of this analysis, a reviewing court "may not substitute its own construction [of the statute] for the reasonable interpretation of an agency." *Hosp. Corp. of America*, 348 F.3d 136, 141 (6th Cir. 2003) (quoting *Peoples Fed. Sav. & Loan Ass'n of Sidney v. Comm'r Internal Revenue*, 948 F.2d 289, 300 (6th Cir. 1991)).

  **2. The Ability to Pay Regulation Is Reasonable Under *Chevron* and Is Not *Ultra Vires* to the INA**

Under *Chevron*, the first question with respect to Plaintiffs' *ultra vires* challenge to the Ability to Pay Regulation is: does the INA expressly or unambiguously require an employer seeking an employment visa on behalf of an alien beneficiary to demonstrate its ability to pay that employee's proffered wage? It does not. Thus, this Court must proceed to *Chevron*'s second step to determine

8

whether the Ability to Pay Regulation rests upon a reasonable construction of the INA.

The Ability to Pay Regulation provides as follows:

> Any petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage. The petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence. Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements . . . . In appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by the Service.

8 C.F.R. § 204.5(g)(2).

The Ability to Pay Regulation has its origin in the 1977 Board of Immigration Appeals' (the "BIA") ruling in *Matter of Great Wall*, 16 I. & N. Dec. 142, 1977 WL 39236 (Bd. Immigration App. Mar. 16, 1977).[3] In *Matter of Great Wall*, the BIA upheld the denial of a petition for a skilled worker visa on the ground that the employer-application failed to demonstrate the employer's ability to pay the proffered wage. *See id.* The BIA explained that requiring a

---

[3] According to the AAO, the Ability to Pay Regulation "codifies" the *Matter of Great Wall* decision. *See In re* [Identifying Information Redacted by Agency], 2014 WL 4294327, at *4 (Dep't. Homeland Sec. Aug. 6, 2014) (citing *Matter of Great Wall* for the proposition that "consideration of whether the petitioner has the ability to pay the proffered wage should necessarily focus on the circumstances as of the date of filing, later codified at 8 C.F.R. § 204.5(g)(2)").

demonstration of present ability to pay was fully consistent with the relevant provisions of the INA:

> At the time that Section 212(a)(14) was originally enacted, the drafters of the Immigration and Nationality Act stated that the purpose of the provision was "to provide strong safeguards for American labor and to provide American labor protection against an influx of aliens entering the United States for the purpose of performing skilled or unskilled labor where the economy of individual localities is not capable of absorbing them at the time they desire to enter this country." [] H.R. Rep. No. 1365, 82nd Cong. 2nd Session (1952), reprinted in (1952) U.S. Code Cong. & Ad. News 1705. . . .
>
> Section 204(a) of the Act requires the filing of a visa petition for classification under section 203(a)(6). Section 204(b) states, among other things, "After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under Section 203(a)(3) or (6), the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is . . . eligible for a preference status under Section 203(a), approve the petition . . . ." []
>
> When a sixth-preference petition is filed,[4] it seeks to establish that the employer is making a realistic job offer to an alien who is qualified, and that the proposed employment will not displace United States workers at the time the petition is filed. I do not feel, nor do I

---

[4] At the time of the *Matter of Great Wall* decision, sixth-preference visas were available to aliens capable of performing skilled or unskilled labor of a permanent nature "for which a shortage of employable and willing persons exists in the United States." 8 U.S.C. § 1153(a)(6) (1982).

10

> believe the Congress intended, that the petitioner, who admittedly could not pay the offered wage at the time the petition was filed, should subsequently become eligible to have the petition approved under a new set of facts hinged upon probability and projections, even beyond the information presented on appeal.

*Matter of Great Wall*, 1977 WL 39236 at *2-3.

Twelve years after *Matter of Great Wall*, the United States Court of Appeals for the District of Columbia Circuit examined that decision and concurred with the BIA's construction of the INA. *See Masonry Masters, Inc. v. Thornburgh*, 875 F.2d 898, 899-90 (D.C. Cir. 1989). The court in *Masonry Masters* explained that requiring a prospective employer to demonstrate a present ability to pay is "clearly" within the INS's authority "because it relates to whether [the] job offer is realistic." *Id*. The court concluded that the ability-to-pay requirement was "rational." *Id.*[5]

In the years since *Masonry Masters* was decided and the Ability to Pay Regulation was adopted, a number of federal courts have deemed the ability-to-pay requirement reasonable and have rejected arguments – like those Plaintiffs make here – that the Ability to Pay Regulation is *ultra vires* to the INA. For instance, in *Rizvi v. Dep't of Homeland Sec. ex rel. Johnson*, --- Fed. App'x---, 2015 WL

---

[5] The precise issue in *Masonry Masters* was whether the determination of the applicant's ability to pay should be made by the INS (USCIS's predecessor) or by the DOL. But the court's statement that the INS "clearly" had the authority to make the determination is certainly relevant to whether the requirement that an applicant demonstrate an ability to pay is *ultra vires* to the INA.

11

5711445, at *2 (5th Cir. Sept. 30, 2015), the United States Court of Appeals for the Fifth Circuit explained:

> Appellants' final contention is that the regulation that requires an employer to demonstrate its ongoing ability to pay the prevailing wage is *ultra vires* of the statute, which provides that "[a]ny employer desiring and intending to employ ... an alien entitled to classification under . . . 1153(b)(3) . . . may file a petition with the attorney general for such classification." The regulation in question, 8 C.F.R. § 204.5(g)(2), allegedly impermissibly expands on this provision by adding requirements of an employer's ability to pay from the priority date until the petition is granted and by restricting what evidence is probative. Assuming *arguendo* that this issue need not have been administratively exhausted, the contention fails. Other provisions of the INA, *e.g.* 8 U.S.C. §§ 1182(a)(5)(A) (requiring DOL certification, *inter alia,* that an alien's wages will not adversely affect the wages of similarly situated U.S. workers), and 1103(a)(3) (Secretary of Homeland Security authorized to promulgate regulations and perform other acts deemed necessary for carrying out his authority), also bear on the propriety of the regulation. Viewed in the proper context, the challenged regulation serves purposes in accord with the statutory duty to grant immigrant status only where the interests of American workers will not be harmed; showing the employer's ongoing ability to pay the prevailing wage is one reasonable way to fulfill this goal.

Likewise, in *Woody's Oasis*, the court rejected an *ultra vires* challenge to the Ability to Pay Regulation and held that USCIS's application of the regulation was fully "consistent with its statutory and regulatory authority." *Woody's Oasis,* 2014 WL 413503, at *3-5.

12

The Court finds *Matter of Great Wall* and the judicial decisions discussed above to be persuasive. As the BIA and federal courts have concluded, a rule and/or regulation requiring an employer-applicant to demonstrate a present ability to pay the proffered wage is reasonable means of insuring that skilled worker visa applications are for legitimate, existing employment opportunities, and the requirement is not inconsistent with the INA. Accordingly, the Court rejects Plaintiffs' *ultra vires* challenge to the Ability to Pay Regulation.

**B.     The I-140 Petition's Denial**

   **1.     Standard of Review**

The parties' motions before the Court are styled as summary judgment motions. The Sixth Circuit has explained that "the use of summary judgment is inappropriate for judicial review of an administrative action under the Administrative Procedure Act," such as the Defendants' denial of the I-140 Petition here. *Donaldson v. United States*, 109 Fed. App'x 37, 39-40 (6th Cir. 2004); *see also Alexander v. Merit Sys. Protection Bd.*, 165 F.3d 474, 480-81 (6th Cir. 1999). Nonetheless, a district court may still "enter judgment on a summary judgment motion so long as the court applies the proper standard of review and does not consider evidence outside the administrative record." *Woody's Oasis*, 2014 WL 413503, at *2 (citing *Alexander*, 165 F.3d at 480-81).

13

Under the Administrative Procedures Act (the "APA"), a court should set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). "Review under the APA is deferential and a court must not 'substitute its judgment for that of the agency.'" *Taco Especial v. Napolitano*, 696 F. Supp. 2d 873, 877 (E.D. Mich. 2010) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The agency, however, "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (internal quotations and citation omitted).

### 2. Defendants Reasonably Concluded That Econo Inn Failed to Demonstrate Its Ability to Pay the Proffered Wage

USCIS uses "three primary methods" to determine whether an employer can pay the proffered wage in an I-140 petition:

> First, an employer can show that he is already employing the alien beneficiary at a wage equal to that specified in the Form ETA–750. Second, an employer can show that its yearly net income exceeds the expected yearly wage specified in the Form ETA–750. Finally, an employer can show that its net current assets exceed the expected yearly wage specified in the Form ETA–750.

*Taco Especial*, 696 F. Supp. 2d at 878 (internal citations omitted). And "if an employer fails to meet any of the three criteria, the USCIS has the discretion to

14

consider any other evidence provided by the petitioner and may use it to find that an employer has the ability to pay the proffered wage." *Id*.

Here, USCIS reasonably determined that Econo Inn failed to establish its ability to pay under any of the three "primary methods." Indeed, it was undisputed that Econo Inn was not already employing Patel at the proffered wage at the time the Petition was filed, and Plaintiffs ultimately *conceded* – and admit now – that "net income and net current assets as reported on [Econo Inn's] tax returns did not fully cover the proffered wage." (Aug. 9, 2013, AAO Decision, ECF # 1-2 at 3, Pg. ID 17; *see also* Pls.' Br., ECF # 18 at 23, Pg. ID 1218.)

USCIS also reasonably determined that the additional documentation submitted by Econo Inn did not establish Econo Inn's ability to pay Patel the proffered wage. For instance, USCIS reasonably rejected Plaintiffs' argument that Econo Inn's bank statements demonstrated its ability to pay. As USCIS explained, those statements "show the amount in an account on a given date, and cannot show the sustainable ability to pay a proffered wage." (Oct. 31, 2012, AAO Decision, ECF # 17-4 at 150, Pg. ID 1071.) Likewise, USCIS fairly noted that Plaintiffs failed to submit evidence "to demonstrate that the funds reported on [Econo Inn's] bank statements somehow reflect additional available funds that were not reflected on its tax returns…." (*Id.*) Moreover, USCIS reasonably declined to accept Econo Inn's *unaudited* financial statements and properly deemed irrelevant the assets

15

owned by Econo Inn's controlling shareholder (rather than by Econo Inn, itself). (*Id.*)

Finally, USCIS carefully considered the totality of Econo Inn's circumstances and reasonably concluded that those circumstances did not establish Econo Inn's ability to pay:

> USCIS may consider the overall magnitude of the petitioner's business activities in its determination of the petitioner's ability to pay the proffered wage. *See Matter of Sonegawa*, 12 I & N Dec. 612. . . .
>
> ***
>
> In the instant case, the petitioner has been in business since 1986, and claims to employ eight workers. Its gross receipts averaged $432,111 since 2001; the petitioner has only shown marginal growth. The petitioner has not established historical growth, the occurrence of any uncharacteristic business expenditures or losses, the petitioner's reputation within its industry, or whether the beneficiary is replacing a former employee or an outsourced service. Although counsel claims that the petitioner incurred management expenses because the beneficiary was not yet working for it prior to 2007, it has not been established who performed these duties, whether duties were the same as certified on the Form ETA 750, or how much the petitioner needed to pay for these services. Going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings. *Matter of Soffici*, 122 I. & N. Dec. 158, 165 (Comm'r 1998) (citing *Matter of Treasure Craft of California*, 14 I. & N. Dec. 190 (Reg'l Comm'r 1972)).
>
> Moreover, the income tax forms indicate that the petitioner has paid under $75,000 in wages and salaries to its eight employees, which lead us to believe more

> likely than not, that the petitioner, could not support nine employees if only eight employees were paid an average combined wages and salaries of $48,457 since 2001.
>
> Thus, assessing the totality of the circumstances in this individual case, it is concluded that the petitioner has not established that it had the continuing ability to pay the proffered wage.

(Oct. 31, 2012, AAO Decision, ECF # 17-4 at 151, Pg. ID 1072.)

Plaintiffs attack USCIS's conclusion on several grounds, but none establish that USICS acted arbitrarily or capriciously. Plaintiffs first argue that USCIS failed to consider the totality of Econo Inn's financial circumstances[6] as required under *Matter of Sonegawa*, 12 I. & N. Dec. 612 (Bd. Immigration App. 1967) (reviewing the totality of circumstances in assessing ability to pay). But that is demonstrably false. As the excerpt above makes clear, USCIS cited *Matter of*

---

[6] Plaintiffs assert that certain USCIS memoranda and manuals – specifically, USCIS Memorandum, *Determination of Ability to Pay Under 8 C.F.R.§ 204.5(g)(2)* (May 4, 2004), and the USCIS *Adjudicator's Field Manual* – impermissibly restricted the scope of USCIS's review of Econo Inn's finances. (*See* Pls.' Reply Br., ECF #24 at 4-5, Pg. ID 1330-31.) Plaintiffs complain that the memoranda and manuals provide "adjudicators the discretion to reject the very evidence that the regulation permits petitioners to submit." (*Id.* at 7, Pg. ID 1333.) This argument fails for two reasons. First, the Ability to Pay Regulation states that USCIS *may* consider "additional evidence, such as profit/loss statements, bank account records, or personnel records" in "*appropriate cases*." 8 C.F.R. § 204.5(g)(2) (emphasis added). The regulation does not *require* USCIS to consider these pieces of evidence. Second (and in any event), USCIS evaluated every single document Econo Inn submitted with its I-140 Petition and *did* consider the totality of Econo Inn's financial circumstances – even when it was not required to do so. Thus, the manuals' guidance had no bearing on USCIS's rejection of Econo Inn's I-140 Petition in this case.

17

*Sonegawa* and expressly considered the totality of Econo Inn's financial circumstances.

Plaintiffs further criticize USCIS for failing to give proper weight to Econo Inn's "substantial backing" from its "sole shareholder." (Pls.' Br., ECF # 18 at 24, Pg. ID 1219.) But the sole shareholder and the corporation are separate legal entities, and Plaintiffs have offered no reason to believe that the shareholder's assets would necessarily be available to satisfy the corporation's obligations – including the payment of Patel's proffered wage.

Plaintiffs also complain that USCIS disregarded the analysis of Plaintiffs' accountant who, after "exclud[ing] depreciation and amortization expenses," concluded that Econo Inn did have the ability to pay the proffered wage. (Pls.' Br., ECF #18 at 24, Pg. ID 1219.) But as this Court concluded in *Taco Especial*, USCIS does not act arbitrarily when it insists that depreciation and amortization expenses be factored into the ability-to-pay calculus. *See Taco Especial*, 696 F. Supp. 2d at 880-82.

Next, Plaintiffs assert that USCIS overlooked the fact that Econo Inn "has been in business for nearly 30 years, has remained solvent during that time, and has always met its financial obligations." (Pls.' Br., ECF #18 at 23, Pg. ID 1218.) A business's longevity, however, is not itself an adequate basis for establishing the business's ability to pay a prospective employee's proffered wage. *See Woody's*

*Oasis*, 2014 WL 413503, at *5 ("Plaintiffs merely point to Woody's Oasis's longevity and recent expansion. However, these factors provide no reason to believe that Woody's Oasis could find the extra money to pay [the employee's] salary"). In any event, USCIS *did* consider Econo Inn's business history, but it noted that Econo Inn "did not submit evidence to establish its historical growth, the occurrence of any uncharacteristic business expenditures or losses, [or] [its] reputation within the industry." (Aug. 9, 2013, AAO Decision, ECF #1-2 at 5, Pg. ID 19.) USCIS did not act reasonably when it determined that Econo Inn's history failed to establish its ability to pay Patel's proffered wage.

Finally, Plaintiffs argue that USCIS's focus on Econo Inn's net income and net assets was misplaced because "a profitable company may show no [net] taxable income because it transfers its profit into other expenditures, such as salaries" to reduce its tax liability. (*See* Pls.' Br., ECF #18 at 22, Pg. ID 1217 (citing *Constr. & Design Co. v. USCIS*, 563 F.3d 593, 595-96 (7th Cir. 2009).) But Plaintiffs point to no evidence that Econo Inn, in fact, shifted any of its profits into other expenditures as a way to reduce it tax liabilities, nor do Plaintiffs identify a specific source of funds that would be available to pay Patel's proffered wage. They have thus failed to show error in USCIS's consideration of net income and net assets. *See Taco Especial,* 696 F. Supp. 2d at 880. ("[T]he employer bears the burden of

19

proof in establishing ability to pay and must show where the extra money would be coming from." (internal quotations and citation omitted)).

## CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that the Plaintiffs' motion for summary judgment (ECF #18) is **DENIED** and the Defendants' motion for summary judgment (ECF #19) is **GRANTED**.


s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: November 9, 2015


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 9, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113